UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD O'NEIL and<br>LUCY GILBERT,<br><br>        Plaintiffs/Appellees<br><br>v.<br><br>BRIAN FALLON,<br><br>        Defendant/Appellant | Dkt. No. 08-CV-11915<br><br><br><br>On Appeal From<br>A.P. No. 06-01264 |

## BRIEF OF PLAINTIFFS/APPELLEES EDWARD O'NEIL AND LUCY GILBERT

Appellees Edward O'Neil and Lucy Gilbert are the plaintiffs in the Adversary Proceeding (objecting to the discharge in bankruptcy of the debt owed to them by defendant/appellant, Brian Fallon) giving rise to this Appeal. Plaintiffs/Appellees (for consistency, referred to herein as "plaintiffs") submit this Memorandum in opposition to the appeal of defendant/appellant Brian Fallon (referred to herein as "Mr. Fallon" or "defendant").

## BACKGROUND FACTS

The defendant, Brian H. Fallon, is in the residential construction and renovation business. It was in this capacity that he had business dealings with the plaintiffs, and the construction and renovation project that he performed at their home in 2002 ultimately led to a lawsuit in Suffolk Superior Court in which these plaintiffs obtained, in 2005, a judgment against Mr. Fallon in the amount of approximately $170,000 (including interest accrued at the time). On or about October 12, 2005, Mr. Fallon filed a voluntary petition seeking relief under Chapter 7 of Title 11 of the

United States Code. This Adversary Proceeding, objecting to the discharge of the Debtor's obligation to these plaintiffs, was commenced on May 18, 2006.

Plaintiffs' Complaint in this Adversary Proceeding included Count VI, alleging non-dischargeability of Mr. Fallon's debt to the plaintiffs under 11 U.S.C. § 523 (a)(2)(A). That portion of plaintiffs' complaint asserted, in part:

> 44. The judgment entered against Mr. Fallon and in favor of Mr. O'Neil and Ms. Gilbert[in Suffolk Superior Court], in the amount of $169,942, was for money obtained by Mr. Fallon by means of false pretenses, false representations, and/or actual fraud.
>
> 45. Specifically, at the time he was hired by the plaintiffs in late 2001, Mr. Fallon told them that he was a licensed Construction Supervisor and a registered Home Improvement Contractor, and that he was insured. In fact, as plaintiffs discovered after they had sued Mr. Fallon, his Construction Supervisor's license had expired in 1998, and his Home Improvement Contractor Registration had expired in 2000. As part of his building permit application, Mr. Fallon submitted copies of these licenses **with forged dates**, to make them appear to be current. Further, upon information and belief, Mr. Fallon was not insured in 2001 (or thereafter), his insurance having been cancelled in 2000.
>
> 46. These were material misrepresentations which the plaintiffs relied on in agreeing to hire Mr. Fallon. Had plaintiffs been aware of these facts, they never would have hired him.
>
> 47. Thus, the entire contractual relationship between the plaintiffs and Mr. Fallon was based on fraud and misrepresentations by Mr. Fallon. Consequently, *all* of the damages they suffered, which the Superior Court awarded them in August, 2005, were "for money obtained by Mr. Fallon by means of false pretenses, false representations, and/or actual fraud."

Adversary Proceeding Complaint, ¶ 44-47.

EVIDENCE ADDUCED AT TRIAL

This case was tried before Judge Hillman in the Bankruptcy Court on September 22, 2008. At trial, plaintiffs introduced a number of exhibits into evidence of which the first, Exhibit 1, is relevant to this appeal. Trial transcript, p.5; plaintiffs Exh. 1.. Plaintiffs also offered the testimony of Edward O'Neil. In summary, Mr. O'Neil testified as follows:

Plaintiffs hired defendant in the Fall of 2001 to carryout a substantial renovation and construction project on their home in Concord Massachusetts. Trial transcript, p.20-21. The dollar amount of the contract was $360,000. *Id.* p. 21. Defendant did not complete the work called for by the contract, and plaintiffs had to hire another contractor both to redo much of defendant's work, and to complete the work that defendant had not performed. *Id.* p. 21.

At the time the contract was entered into, defendant gave plaintiffs, for their authorization, a building permit application (plaintiffs' Exh. 1) that Mr. Fallon was going to be submitting on their behalf. Both plaintiffs asked the defendant if he was licensed, registered, and insured, and defendant assured them that he was. *Id.* p. 23. To verify this, Mr. O'Neil went to the Town of Concord Building Department to inquire how to be certain that defendant was licensed, registered and insured. He was told that the Town would not issue a building permit without verifying this. *Id.* p. 23-24.

The Building Permit Application includes places for a contractor such as the defendant to list his Construction Supervisor's License number and Home Improvement Contractor Registration number. Plaintiffs' Exh. 1, pp. 1, 3. In addition, the defendant included with the application a Xerox copy of what purported to be a Construction Supervisor's License and Home Improvement Contractor Registration. Plaintiffs' Exh. 1, pp.5, 6; transcript p. 24-26. According to the document submitted by the defendant in support of the building permit application, his construction supervisor's license appeared to expire on May 5, 2005. Similarly, the home improvement contractor registration appeared to expire on November 25, 2002. In reality, both the license and the registration had already expired by the Fall of 2001 when they were submitted to the Concord Building Department. Plaintiffs' Exhibit 1; transcript p. 24-26.

**In other words, defendant had forged the expiration dates on his license and registration to make them appear to be current when they had in fact expired. Defendant submitted the Building Permit Application, stating that he had a valid license and registration, under the pains and penalties of perjury.** Plaintiffs' Exhibit 1. **Defendant lied to the plaintiffs regarding his license and registration.** Plaintiffs would not have hired defendant if they had known that he did not have a license and registration, and certainly would not have hired him if they had known he had produced forged or altered documents to make it appear as though he was licensed and registered. Transcript p.27.

In 2002, Plaintiffs commenced an action against defendant in Suffolk Superior court, alleging negligence and breach of contract. Plaintiffs were not aware at the time the suit was commenced that defendant was not licensed and insured. Transcript p. 30. The only allegation of fraud in the Superior Court complaint related to a specific, relatively small portion of the work done by defendant; plaintiffs had asked defendant to perform certain "extra" work and defendant gave them an oral estimate of $5,000 - $6,000 for the work. Plaintiffs authorized defendant to do the work, and defendant later charged them approximately $36,000. Plaintiffs alleged in the Superior Court complaint that defendant had fraudulently and intentionally overcharged them for that work. Transcript p. 34-37. Plaintiffs obtained a default judgment against defendant. Transcript p. 37. Thus, the "trial" in Superior Court was actually a hearing to assess damages. *Id.* Plaintiffs did not learn that the defendant was not licensed, registered and insured until after the default judgment (in Suffolk Superior Court) was entered against defendant. The defendant's lack of licensure did not come to their attention until the hearing to assess damages was under way. *Id.,* p. 30.[1]

---

[1] The hearing to assess damages lasted ten days, held on various dates between April 2004 and February 2005.

The Superior Court judgment against defendant was approximately $170,000, including interest. Transcript p. 27-28. No damages were awarded on plaintiffs' fraud claim relating to the alleged overcharging for the "extra" work. Id. p. 37.

During the Bankruptcy Court trial, after the introduction into evidence of plaintiffs' Exhibit 1, and the testimony of Mr. O'Neil, Judge Hillman called counsel for both parties into his chambers. He told counsel that it appeared plaintiff had offered sufficient evidence to establish a case of non-dischargeability under Section 523 of the Bankruptcy Code, and asked Edward Dial, counsel for the defendant, whether Mr. Dial would be offering any evidence to rebut the testimony of Mr. O'Neil. Mr. Dial stated that he did not believe he would be, but he would like an opportunity to confer with his client before responding. Judge Hillman gave Mr. Dial the opportunity to confer with his client. **Mr. Dial came back into chambers, and advised Judge Hillman that he did not intend to offer any evidence to rebut Mr. O'Neil's testimony.** Mr. Dial further stated that his client's only opposition to the Judge Hillman proposed ruling was that it was his understanding that the Superior Court Judgment was "*res judicata*" on the question of whether plaintiffs' claim against Mr. Fallon could be found to be one for money obtained by fraud or misrepresentation within the meaning of 11 U.S.C. § 523(a)(2)(A). In light of Attorney Dial's explicit statement to the Court that he would not be offering any evidence to rebut Mr. O'Neil's testimony, Judge Hillman ruled in favor of the plaintiffs on their claim under 11 U.S.C. § 523(a)(2)(A), whereupon the defendant filed this appeal.

### ARGUMENT

I. **Defendant's Arguments Should Be Rejected As They Are Based On The Spurious Claim That He Was Denied The Opportunity To Present His Case**

Defendant's principal argument, which is laced throughout his brief, is the utterly

false assertion that the Bankruptcy Court made an intemperate rush to judgment and actually precluded Mr. Fallon from offering evidence which, if considered, would have prevented the entry of judgment against him. This falsehood appears in no fewer than seven places in defendant's brief. *See, e.g.*, defendant's brief p.2, n.1: "the Bankruptcy Court never afforded [appellant] the opportunity [to present evidence] due to its abrupt decision;" p.8: "This appeal follows, challenging Judge Hillman's abrupt termination of the proceedings, without even reviewing the State Court Judgment or allowing any evidence to be adduced by Fallon on licensing or any other issue;" p. 9: "Fallon submits initially that the totality of the circumstances of this so-called "trial" requires reversal of Judge Hillman's abrupt judgment because he was never afforded an opportunity to be heard;" p. 10: "Instead, Judge Hillman . . . refused to allow Fallon to present his proof or rebut the evidence offered by O'Neil."

These arguments cross the line separating zealous advocacy from misrepresentations to the Court.² Although the transcript does not contain all of the details of what transpired in Judge Hillman's chambers, the transcript does include Judge Hillman's summary of that in-chambers conference:

> THE COURT: After the recess I had a conference with counsel in my Chambers, and I asked Mr. Dial what he was going to offer in opposition to the testimony which we've already received this morning from the plaintiff, Mr. O'Neil. The conclusion was that as to the fact of the altered licenses having been submitted to the town in order to get the building permit there would be no real opposition. Based upon that I was prepared to find, and I am prepared to find, based on the decision in **Gem Ravioli, Inc. vs. Creta, (IN RE: Creta)**, 271 B.R. 214, a BAP decision from 2002, that the plaintiff has

---

² Plaintiffs are filing a separate motion to strike the defendant's brief or to impose other appropriate sanctions, on the grounds that although the brief is nominally filed *pro se*, it was, upon information and belief, actually "ghostwritten" by Mr. Fallon's counsel in the Superior Court action, attorney William Hudak. Among the principal reasons that the Federal Courts look with disfavor on "ghostwritten" briefs, see, e.g., *In re Brown* 354 B.R. 535, 541-543 (Bkrtcy.N.D.Okla.,2006), is that they do not include a signature of an attorney attesting, under Fed. R. Civ. P. 11, that to the best of that attorney's knowledge, information and belief, "the factual contentions have evidentiary support." Defendant's "*pro se*" appeal brief, replete with false statements, is a perfect example for the reason for Rule 11.

established a dischargeability finding under 523(a)(2)(A) of the Bankruptcy code, and as such I am prepared to enter judgment for the plaintiff on that section only.

Both counsel were then given an opportunity, on the record, to respond to the Judge's proposed ruling. Mr. Dial, counsel for the defendant, did not refute or contradict Judge Hillman's summary of the in-chambers conference in any way. He did not state that he wished to offer any testimony, regarding the contention that defendant had submitted altered, expired licenses in order to obtain a building permit for plaintiffs; or regarding the plaintiffs' testimony as to their reliance on defendant's misrepresentations about his license and registration; or about any other topic. He did not offer into evidence any documents. His response to the Judge's proposed ruling made it clear that the defendant's **sole opposition** to the entry of judgment for the plaintiffs under 11 U.S.C. § 523(a)(2)(A) was based on the argument that the Superior Court judgment included no damages for fraud; that that judgment was binding on the Bankruptcy Court; and that therefore, as a matter of law, plaintiffs could not prevail on their claim in Bankruptcy Court that the Superior Court judgment was for "money obtained by fraud." Attorney Dial stated:

> MR. DIAL: Yes, Your Honor. Thank you. Your Honor what we – what the evidence would show, or what we would try to show would be that in the state court proceeding the issue of the permits and the license was fully adjudicated, that the Court in that proceeding had a chance to listen to the testimony on the issue and determine that there was no fraud involved in those matters, so that our position would be that the lower court decision, or the Superior Court decision rather, is *res judicata* on that issue, and that this Court would be bound by the findings thereof. Thank you, Your Honor.

Even after making this statement, attorney Dial did not seek to offer the Superior Court judgment into evidence. Indeed, that judgment is not part of the record in this appeal.

This Court should give no credence to the idea that the defendant and/or his counsel were somehow prevented by Judge Hillman from offering evidence to rebut the plaintiffs'

7

*prima facie* case. Faced with the Judge's proposed ruling, Mr. Dial made a conscious decision not to offer any evidence whatsoever. Indeed, it is worth noting that Mr. Dial is not the author of defendant's after-the-fact attempt to re-write what happened at trial. The appeal should be dismissed for this reason alone.

II. **At Trial, Plaintiffs Proffered Evidence From Which The Judge Could Find All Six Elements Of A *Prima Facie* Case Of Non-Dischargeability Under 11 U.S.C. Section 523(a)(2)(A)**

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt "for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In order to have the debt to it declared nondischargeable under section 523(a)(2)(A), a creditor must establish the following:

1. The debtor made a knowingly false representation or one made in reckless disregard of the truth;

2. The debtor intended to deceive;

3. The debtor intended to induce the creditor to rely upon the false statement;

4. The creditor actually relied upon the misrepresentation;

5. The creditor's reliance was justifiable; and

6. The reliance upon the false statement caused damage.

*McCrory v. Spigel (In re Spigel),* 260 F.3d 27, 32 (1st Cir. 2001), citing *Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir.1997). Contrary to defendant's argument, plaintiffs did present evidence from which Judge Hillman could find each of these elements.

Based on the testimony of Mr. O'Neil, Judge Hillman was clearly entitled to find that the defendant knowingly made false representations to the plaintiffs (and to the Concord Building

Department) regarding his status as a (supposedly) licensed, registered, and insured contractor. The fact that the licenses were altered so as to appear current when they had in fact expired, is certainly sufficient basis to conclude that these misrepresentations were made knowingly, and not inadvertently. There was likewise a clear evidentiary basis for Judge Hillman to conclude that the defendant had made these statements "intending to deceive," since, presumably, defendant knew that he would not be able to obtain a building permit without a valid, current license. Similarly, it is a reasonable inference from the testimony of Mr. O'Neil that defendant understood that the O'Neils, having specifically inquired as to whether he was licensed and registered, would not have hired him if they knew his license and registration had expired. Thus, Judge Hillman could find from the testimony presented that the defendant intended to induce the O'Neils to rely upon his false statements.

There is no doubt that Judge Hillman could find that the plaintiffs actually relied on the defendant's misrepresentations, since Mr. O'Neil testified that he did so rely, and this testimony (like all his testimony) was not even contradicted, much less disproved, by any evidence offered by defendant. Judge Hillman could also find that this reliance was reasonable, since it is certainly reasonable for a homeowner to rely on a contractor's statements regarding his license and registration. Moreover, in this case, Mr. O'Neil did more than simply accept the defendant's word; he actually went to the Concord Building Department and was told that a building permit would not be issued if the contractor was not licensed and insured.

Thus, Judge Hillman was clearly justified in finding that plaintiffs had presented sufficient evidence to establish the first five elements of a prima facie case of non-dischargeability under 11 U.S.C. § 523(a)(2)(A). The sixth element, causation, is addressed below.

III. **Plaintiffs Introduced Evidence From Which The Court Could Properly Find Both Legal And Factual Causation**

As noted above, Judge Hillman ruled in favor of the plaintiffs based on the decision of the Bankruptcy Appellate Panel in *In re Creta* 271 B.R. 214, 218 -222 (1st Cir. BAP 2002). In that case, the defendant debtor had induced the plaintiff creditor to hire him, based on the defendant debtor's misrepresentation that he was a licensed contractor. The defendant debtor performed work for the creditor which resulted in a lawsuit and a judgment against the defendant debtor. The Bankruptcy Court in that case found in favor of the defendant debtor on the creditor's claim that the debt was non-dischargeable as being the result of the defendant debtor's false statement that he was licensed. The Bankruptcy Appellate Panel reversed the Bankruptcy Court and held that the creditor had presented at least sufficient evidence to establish a *prima facie* case of all six elements of non-dischargeability, including causation.

Defendant in this case spends much of his brief discussing the sixth element of a *prima facie* case of non-dischargeability under 11 U.S.C. § 523(a)(2)(A), *i.e.*, that the plaintiffs' reliance upon the defendant's false statements caused the damage for which plaintiffs obtained the judgment against the defendant. Pointing out that under *Creta* (which defendant refers to as the *Gem Ravioli* decision) plaintiffs must establish both "causation in fact" and "legal causation," defendant contends that plaintiffs did not and cannot establish either of these aspects of causation. This is incorrect.

A. Causation In Fact

The *Creta* Court relied on the *Restatement (Second) of Torts* (1976) ("*Restatement*") for guidance in analyzing the "causation" requirements of section 523(a)(2)(A). The *Restatement* explains that proximate causation encompasses two elements, "causation in fact" and "legal

causation." *Restatement* §§ 546, 548A [citations omitted]. "Causation in fact" requires that a debtor's misrepresentations be a "substantial factor in determining the course of conduct that results in [the] loss." *Restatement* § 546. Applying this requirement to the facts of that case, the *Creta* Court held "Gem Ravioli [the creditor] could establish causation in fact through evidence demonstrating that the Debtor's false statement regarding the license in fact induced Gem Ravioli to enter into the contract and that the misrepresentation was a substantial factor in influencing Gem Ravioli's decision to hire the Debtor to perform the work." *Creta, supra,* 271 B.R. at 219.

The testimony of Mr. O'Neil in this case matches precisely the evidence that the *Creta* court stated would suffice to establish causation in fact. Mr. O'Neil testified that the defendant's "false statement regarding the license in fact induced [the plaintiffs] to enter into the contract." Mr. O'Neil further testified that the defendant's false statements were not only a "substantial factor" in influencing his decision to hire the defendant, but that he would not have hired defendant if he had known the statement were false. There is no doubt that defendant offered sufficient evidence to establish a prima facie case of "causation in fact."

### B. Legal Causation

As noted above, the *Restatement* counsels that causation incorporates the concept of "legal causation," which requires that a creditor's loss "reasonably be expected to result from the reliance." *Id.* § 548A. "In general, the misrepresentation is a legal cause only of those pecuniary losses that are within the foreseeable risk of harm that it creates.... the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow...." *Id.* § 548A comments a and b. Defendant argues that judgment in favor of the plaintiffs was improper because the Superior Court judgment was not based on "defective workmanship" (as was the case in *Creta*). Defendant also claims that there is a distinction

between being *unlicensed* (as in *Creta*) and having an *expired license*, as was the case here. Thus, defendant argues, plaintiffs did not and cannot establish "legal causation" between the defendant's false statements that he was licensed and registered, and the damages giving rise to the Superior Court judgment. This argument fails for several reasons.

First, it is not correct that plaintiffs obtained a judgment against the defendant for reasons other than defective workmanship. Mr. O'Neil testified that his damages awarded in the Superior Court trial were based on the fact that, after their business relationship with the defendant came to an end, the plaintiffs had to hire another contractor (1) to complete the work that defendant had not performed, and (2) because "much of the work [done by the defendant] had to be redone." Transcript p. 21. This testimony, **which was unrebutted**, makes this case precisely factually analogous to *Creta*. Thus, for the same reason that the *Creta* court held that defective workmanship is the foreseeable result lack of licensing (because licensing implies a certain level of skill), in this case it is foreseeable that lack of licensing will result in "much of the work [having] to be redone."

Second, defendant's attempt to argue that having an *expired license* is somehow "better" than (or even different from) being *unlicensed* should be rejected by this Court. As plaintiffs learned -- after the lawsuit against defendant had been commenced, after default judgment had been entered, and after the hearing to assess damages had begun -- defendant's "licenses" that he submitted to the Town of Concord Building Department had expired well over one year prior to the time he entered into the contract with the plaintiffs in the Fall of 2001. Transcript, p. 24-26; Superior Court Exh. 28. The Massachusetts regulations governing Construction Supervisor's Licenses, promulgated by the State Board of Building Regulations and Standards ("State

Board"), 780 CMR R5, *et seq.*, require an individual to take an examination in order to obtain a license. 780 CMR R5.2.4 provides that "a renewal license shall not be issued unless application therefore is made within one year of the date of expiration of the most recently issued license. Failure to submit a renewal application and to acquire a license within this time period shall be cause for examination or re-examination." In other words, the regulatory scheme governing Construction Supervisors' Licenses reflects the judgment of the State Board that once a license has expired for more than one year (as was the case here), the individual in question must take and pass another examination, as if he had never been licensed. From the standpoint of the Commonwealth of Massachusetts, an individual whose license has been expired for more than one year is no different than an unlicensed individual. Under the facts of this case, the distinction that defendant is attempting to draw between being *unlicensed* and having an *expired license* thus has no meaning.

Third, defendant's argument is based on an overly restrictive interpretation of the *Creta* decision, namely, the idea that defective work is the only foreseeable harm that might flow from a misrepresentation regarding licensing. In this case, though, defendant did not simply mistakenly claim to be licensed when his license had expired. He knew his license had expired. He took affirmative steps to alter his license to make it appear current, presumably because he did not want to (or could not) take the licensing exam that would have been required for him to hold a valid license in the Fall of 2001. He specifically submitted altered licenses to the Concord Building Department, stating under oath on the building permit application that he was licensed and insured. And, he specifically told the plaintiffs that he was licensed, registered, and insured. These statements went to the essence of the contract, as Mr. O'Neil testified that he

would not have hired the defendant but for these representations. Compare *In re Baiata,* 12 B.R. 813, 820 (Bkrtcy. N.Y., 1981)("[W]here the misrepresentation goes to the essence of the contract, the bankruptcy court should not permit a debtor to benefit from the uncertainty that may arise in the very circumstances which the fraudulent misrepresentation created. . . . This Court is persuaded on the evidence adduced and finds that the plaintiff would not have hired the debtor had the debtor not falsely represented that he was licensed by Suffolk County. The incidence of license conveys to lay persons a concept of authority and standards of workmanship impacting on reliance.").

It is absolutely "reasonably foreseeable" that an individual who flouts the legal requirements of his profession, alters licenses, makes false statements under oath, and lies to prospective clients in order to induce them to enter into a contract, may not honor his promises and contractual commitments. This sort of behavior evidences an obvious contempt for legal and contractual obligations, and makes it plain that no promise made by such a person is trustworthy. To the extent the plaintiffs' damages in the Superior Court case were the result of defendant's failure to complete the job (as opposed to the defendant's poor workmanship), they were the reasonably foreseeable result of the conduct and false statements of the defendant that induced the plaintiffs to hire him.

### IV.   Defendant Did Not Rebut Plaintiffs' *Prima Facie* Case, Did Not Preserve His Right To Do So, And Cannot Argue On Appeal That The Failure Of The Bankruptcy Court To Consider His Evidence Was Error

It is undisputed that, at trial, defendant did not offer any evidence to rebut the evidence adduced by plaintiffs. However, as discussed above, in his appeal brief defendant repeatedly asserts that he would have rebutted plaintiffs' evidence, if only he had been allowed to do so.

This assertion is false, for the reasons set forth above. But even if defendant did have some evidence that might have rebutted plaintiffs' *prima facie* case, he was required at trial to take steps to preserve his right to offer such evidence. Plainly, he did not do so.

Rule 103 of the Federal Rules of Evidence provides, in part: "(a) Effect of Erroneous Ruling.--Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and. . .(2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Based on this rule, numerous Federal Courts of Appeal have held that if a party fails to offer evidence, or fails to make an offer of proof, the appellate court will not consider any argument based on what the evidence would have, or might have, shown. See, e.g., *Figueroa v. Rivera,* 147 F.3d 77, 81 (1st Cir.1998)( "[A]ppellants did not raise these contentions below, and they are thus foreclosed from unveiling them for the first time on appeal."); *Maddox v. Patterson,* 905 F.2d 1178, 1181 (8th Cir.1990) (party that did not offer record into evidence at trial cannot complain on appeal that district court did not admit record); *Jenkins v. Southern Farm Bureau Cas.*, 125 Fed. Appx. 749, 751, 2005 WL 551937, 2 (8th Cir. 2005)(" Mr. Jenkins argues the district court erred in declining to admit the entire policies-and-procedures manual into evidence. The record shows his lawyer never offered the entire policies-and-procedures manual into evidence. . . .We therefore reject this claim."); *Meredith v. Hardy,* 554 F.2d 764, 765 (5th Cir. 1977)(" Finally, when the Court forbade further testimony on this item, the defendants failed to make an offer of proof as required under Rule 103(a)(2) of the Federal Rules of Evidence. Accordingly, even if the Court erred in its ruling, it was not preserved for our review.")

Thus, even if defendant had been prevented by the Bankruptcy Court from offering evidence, as he now claims, it was incumbent upon his counsel to make an offer of proof, or to object, or to somehow let the Bankruptcy Court know that there was evidence that the Court should consider before ruling that plaintiffs had established a *prima facie* case of non-dischargeability, and before holding plaintiffs' case to be unrebutted. As the Court in *Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1175-1176 (7th Cir. 1998) stated:

> A lawyer who is forbidden to introduce some bit of evidence need not, in order to preserve a challenge to the judge's ruling for appeal, tell the judge that he is taking an exception to the judge's ruling. That traditional requirement was abolished by Fed. R. Civ. P. 46. He must, however, not only make clear to the judge what the evidence is that he wants to present, Fed. R. Evid. 103(a)(2), but also his ground (unless it is obvious) for believing that the evidence should be admitted. Fed. R. Civ. P. 46; [citations omitted] He must, in other words, give the judge a fair chance to avoid error. [citations omitted] It is implicit in this requirement that the party cannot withdraw the offer and then complain on appeal that the evidence wasn't admitted.

There is nothing in the record on appeal indicating that defendant made any effort to introduce the evidence he now claims would rebut the plaintiffs' case. He has waived his right to do so, and his right to make that argument on appeal.

V. **The Superior Court Judgment Did Not Address The Question Of Whether Plaintiff's Damages Resulted From Defendant's Intentional Misrepresentations Regarding Licensing**

If, notwithstanding the defendant's failure to introduce any evidence or to make any offer of proof, this Court is inclined to consider the argument that the Superior Court judgment (which is not in evidence and not part of the record on appeal) precludes plaintiffs, under principles of *res judicata*, from asserting a claim under 11 U.S.C. § 523(a)(2)(A), then this Court should likewise consider certain documents filed in Suffolk Superior Court Civil Action No. 02-05167, *O'Neil, et al. v. Brian Fallon*, that the plaintiffs in this case conditionally identified as part of the record on appeal. These documents are the Complaint in that action, the entry of Default against

16

the defendant, and the denial of the defendant's Motion to Remove the Default.

Those documents corroborate the testimony of Mr. O'Neil that the allegation advanced in Bankruptcy Court (that the entire debt to plaintiffs was for money procured by fraud by virtue of the defendant's intentional misrepresentations regarding licensing) was not part of the Superior Court Complaint; and that a default judgment was entered against defendant in that case, so that by the time of the hearing to assess damages (which has been loosely referred to as a trial), liability was no longer an issue. As Mr. O'Neil testified in Bankruptcy Court, plaintiffs did not learn until after default judgment had been entered that defendant had lied to them about his licenses. Given the procedural posture of the case when they learned this, the opportunity to advance new theories of liability had passed. In any event, Mr. O'Neil clearly testified in Bankruptcy Court that this issue was not litigated in the Superior Court action:

> Q: Okay. During the Superior Court trial, or in the complaint did you at any time raise the allegation that the entire relationship between you and Mr. Fallon had been obtained by his fraudulent representations to you about his construction supervisor's license or his home improvement contractor's registration or his insurance?
>
> A [Mr. O'Neil]: No.

Transcript, p. 37. Again, this testimony was **unrebutted**. Regardless of what claims defendant now makes in his appeal brief, there is **nothing in the record on appeal** from which this Court can draw (or the Bankruptcy Court could have drawn) any conclusion different from the testimony quoted above. The defendant's wholly unsupported arguments to the contrary notwithstanding, there is no basis in the record on appeal for reversing the Bankruptcy Court.

## CONCLUSION

For the reasons set forth above, plaintiffs submit that the appeal should be dismissed, and that the judgment of the Bankruptcy Court should be affirmed.

Respectfully submitted,
Edward O'Neil and Lucy Gilbert
By their attorney

_____
Evans Huber
BBO # 542133
Frieze Cramer Cygelman
Rosen & Huber LLP
60 Walnut Street
Wellesley, MA 02481
(781) 943-4043

Date: 12/18/08

## CERTIFICATE OF SERVICE

I, Evans Huber, hereby certify under the pains and penalties of perjury that on December 18, 2008, a copy of the foregoing document was served upon Brian Fallon by First Class Mail, postage prepaid, at 19 Moulton Road, Peabody, MA 01960. No Counsel of Record has appeared on behalf of Mr. Fallon, and there is no means of serving him electronically.

_____
Evans Huber